N/S

1  Name: Richard R. Lawless

2  Address: 30279 Redding Avenue

3        Murrieta, CA 92563

4  Phone: 951-440-5230

5  Fax: N/A e-mail richardrlawless@gmail.com

6  In Pro Per

7

**FILED**
CLERK, U.S. DISTRICT COURT

**12/08/2021**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___AP___ DEPUTY

8  ## UNITED STATES DISTRICT COURT

9  ## CENTRAL DISTRICT OF CALIFORNIA

10  Richard R. Lawless

11

12                                    Plaintiff

13              v.

14  Judge Hiram E. Puig-Lugo and

15  The Washington D.C. Superior Court

16                          Defendant(s).

17  PLEASE SEE ATTACHED

CASE NUMBER:

5:21-cv-02072-JWH(SP)

To be supplied by the Clerk of
The United States District Court

**COMPLAINT**

CV-126 (09/09)          PLEADING PAGE FOR A COMPLAINT

## United States District Court, Central District of California

**Plaintiff**
Richard R. Lawless
30279 Redding Avenue
Murrieta, CA 92563
951-440-5230
richardrlawless@gmail.com

**Defendants**
Judge Hiram E. Puig-Lugo
C/O Washington D.C. Superior Court
500 Indiana Avenue, N.W.
Washington, D.C. 20001
202-879-8370
JudgePuig-LugoChambers@dcsc.gov

General Counsel
C/O Washington D.C. Superior Court
500 Indiana Avenue, N.W.
Washington, D.C. 20001

### Complaint

### Plaintiffs Pleading

This is a civil rights complaint in which a Washington D.C. Superior Judge, Hiram E. Puig-Lugo issued a ruling to dismiss a case with prejudice. According to the Judges own ruling, the court did not recognize the plaintiffs cause of action and therefore had no legal authority or jurisdiction to make any such ruling. The Judge acted maliciously or in reckless disregard of the plaintiff's civil rights. In an effort to justify this illegal ruling the Judge intentionally misstated the facts of the case, fabricated evidence, applied inapplicable statutes to the ruling and refused to correct his errors by ignoring multiple motions based on well settled case law.

The plaintiff is alleging that the Judge and the Court denied the Plaintiffs seventh amendment rights to a jury trial and his fourteenth amendment rights regarding the taking of property. The plaintiff is seeking two forms of relief from the court. Plaintiff is requesting that the court vacate the Judges Superior Court ruling allowing this plaintiff to seek another jury trial in a different venue with jurisdiction. The plaintiff is also asking the court to consider punitive damages for the courts egregious behavior and abuse of the legal system.

The Plaintiff lives in California.  The California State Superior Court recognizes the civil (tort) of aiding and abetting by statute and common law and the court would have jurisdiction.

This is a case involving government corruption and an effort by a Judge and a Court to protect much of the criminal activity in the Washington D.C. Swamp.  It is clear by the Judges actions that the Court was attempting to protect the defendant from a legitimate legal dispute and shield government officials that were involved.  This is a case of the "Swamp" trying to protect one of their own.

The primary dispute is that the Court issues a ruling that it had no legal authority to consider.  The Plaintiff's lawsuit (Richard Lawless V. Wp Company, LLC, AKA The Washington Post) was filed with one form of action only "Aiding and Abetting".  The Plaintiff filed the case in Washington D.C. Superior Court because the court had affirmed and reaffirmed the "Restate of Torts I, II & III.  The Restatement of Torts II specifically recognized the common law tort of Aiding and Abetting.  The Plaintiff believed he filed his case in the right court.

"In the Judges order to dismiss the case <u>with prejudice</u> the order stated the following;

*<u>The District of Columbia Court of Appeals "[has] not recognized the tort of aiding and</u>*
*<u>abetting in the District[.]" Sundberg v. TTR Realty, LLC, 109 A.3d 1123, 1129 (D.C. 2015)</u>*
*<u>(citing Flax v. Schertler, 935 A.2d 1091, 1107 (D.C. 2007)). It is not this Court's place to</u>*
*<u>recognize a tort that the Court of Appeals has declined to recognize on numerous occasions.</u>*
*Accordingly, Mr. Lawless's complaint fails to state a claim upon which relief may be granted."*

The Federal Court needs to look no further to dismiss the Superior Court ruling.  According to case law, a Court cannot consider the merits of a case they do not have jurisdiction in.  <u>Regardless</u> of all the false and punitive statements by the Judge, the case should have been immediately dismissed without prejudice or comment.  The Plaintiff filed motions to this effect that were ignored by the Judge.

<u>To avoid possible statute of limitations issues with the original defendant, the Plaintiff prays the court will act quickly to vacate this illegal ruling so the case can be refiled in California Superior Court.</u>

<u>This is not a dispute about the merits of the original case filing in the DC Superior Court.</u> The Court had no jurisdiction and should <u>never have considered the merits</u>.  But when the court violated these well settled procedures and case law, they used knowingly false statements, fabricated evidence with a complete disregard of well settled case law to dismiss this case with prejudice.  That is why the plaintiff believes punitive damages are in order.

The Plaintiff's basis for the original dispute was that the Washington Post and its senior managers knew that the United States Government, its Agencies and Officials participated in a seventy-four-billion-dollar PONZE Scheme to defraud the American people. The Plaintiff incurred four-hundred and eight two million dollars in damages from these criminal actions.

The Plaintiff wanted to hold the Washington Post liable for their intentional cover-up and the senior managers of the Washington Post for their decisions. The Plaintiff did not want to ruin the lives of the Washington Post senior managers so Plaintiff filed seven lawsuits against the most senior managers in small claims court, limiting the defendant's exposure to just ten thousand dollars each. The Plaintiff planned on sue the Post in a separate civil action for the four-hundred and eighty-two million dollars in damages.

Plaintiff filed seven small claims lawsuits <u>for negligence and fraud</u> that were combined by the small claims court into one twenty-minute hearing. The Judge dismissed the cases with prejudice based on the Washington, D.C. Anti-SLAP Statute. Plaintiff requested a review of the decision and that review was denied by the review Judge who also enjoined the Plaintiff from further lawsuits claiming the lawsuits were without merit or justification.

**Court computer records show that neither the small claims Judge or the Review Judge or Judge Puig-Lugo ever opened the 10 evidence exhibits sent to the court. There was never any attempt by all three judges to consider the evidence.**

The evidence consisted of one hundred and ten pages of government documents, government reports, videos and freedom of information request disclosures supporting the allegations. It was pretty damning <u>government provided evidence</u>.

Before The review Judge enjoined the Plaintiff, the plaintiff filed a four-hundred- and eighty-two-million-dollar lawsuit in D.C. civil court and was assigned Judge Puig-Lugo <u>who immediately dismissed the case with prejudice with no hearings.</u> Again, this Judge never reviewed the evidence exhibits. The Judge also cited the small claims dismissal for negligence and fraud as reasons for his dismissal of the Aiding and Abetting case. The Judge didn't seem to care that the causes of action were materially different. The Judge in his rulings also fabricated a number of statements to further justify his immediately dismissal of the case with no review of the evidence or any hearings.

Plaintiff asks the court to please keep in mind the judges repeatedly cite the small claims actions as abusive with no review of any evidence or consideration of the incorrectly applied Anti-SLAPP Statute. At this stage all of these actions were based on a twenty-minute small claims hearing.

The Plaintiff petitioned the Appellate Court for an appeal and was denied, <u>Effectively, barring the Plaintiff from relief from any State Court in the United States.</u> A twenty-minute small claims hearing, no evidence reviewed, different causes of action, incorrectly applied Anti-SLAPP statutes and an assortment of false statements and fabricated evidence. These three Judges appeared to have the same goal, "kill the litigation and keep the defendant from going to any other court".

**Flaws in the Small Claims Court and the Civil Courts Application of the D.C. Anti-SLAPP Statute;**

For the Anti- SLAPP Provision to be invoked the Plaintiff or the Defendant must allege prima facie evidence showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest, then the motion shall be granted unless the responding party demonstrates that the claim is likely to succeed on the merits, in which case the motion shall be denied.

The statue clearly identifies four protected actions which would allow for a Prima Facie Showing. Only one can possibly apply;

1)    Any Written or Oral Statement

In Mr. Lawless's Case(s) the Plaintiff, Mr. Lawless is not claiming that the Defendant is liable for printing any articles or making any orals statements.

Try as you must, not even the Defense Counsel can Identify anything of the sort in these cases.

What does the Defense Say?

• My defendants work for a Newspaper

• My Newspaper covered the general topic of the Puerto Rico Bond Default and

The Puerto Rico bankruptcy. Therefore, the Anti-SLAPP Act should apply.

That is the defenses argument in its totality. The act requires that the case would need to be based on a protected written or oral issue. Neither the Judges nor the Defense has ever met that benchmark.

The Court could not identify what protected written article or oral statement the Plaintiff has listed in his complaint. If there is none that the Defense Counsel can identify or the Court can identify, then the court cannot meet the requirements needed to apply the Anti-SLAPP Act.

The Defense Counsel and the Court simply say that the topic of the Puerto Bond Default and the Puerto Bankruptcy is generally related to the case and that is enough. This would not be a proper application of the Statute requirements.

Case law and numerous appellate rulings state that argument is insufficient for the application of the Anti-SLAPP Statute.

1.   "That a broad and amorphous public interest can be connected to a specific dispute is not sufficient to meet the statutory requirements of the anti-SLAPP statute." Id."

2.   "In evaluating the first prong of the anti-SLAPP statute, [the Court] must focus on the "specific nature of the speech rather than the generalities that might be abstracted from it."

3. The Supreme Court rejected this argument. As the Court explained, "a claim may be struck only if the speech or petitioning activity *itself* <u>is the wrong complained of</u>, and not just evidence of liability or a step leading to some different act for which liability is asserted.

4. The court found illegal activity is not a protected activity. The trial court found that the record "conclusively" established that Alice's and Toothman's statements to the police were "illegal activity" under Penal Code section 148.5, and, as such, <u>not</u> "<u>protected activity</u>" within the meaning of the anti-SLAPP statute. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322-325 [46 Cal. Rptr. 3d 606, 139 P.3d 2] (Flatley).)

5. Courts apply a two-pronged analytical framework to evaluate an anti-SLAPP special motion to strike. The first is the "protected activity" prong, under which the defendant has the burden of proving that the activity that gave rise to the plaintiff's cause of action arises from one of the four enumerated categories under § 425.16(e):

The First Prong cannot be met and consideration of the Anti-SLAPP Act should have been denied.

The Second Prong Would require a review of the evidence by the Judges. And we know that never happened through the court's computer records.

Instead of using the ten evidence exhibits and the Plaintiffs three successful FTCA cases to support the Plaintiffs argument they would likely win at trial. The three Judges ignored the evidence and actually used the three successful administrative law actions to justify their actions to enjoin the plaintiff and further the support the dismissal of the cases with prejudice.

All three Judges make the same mistakes and engage in the same punitive and unjustified actions.

These are some of the Judges options in other parts of the Anti-SLAPP statute;

"When it appears likely that targeted discovery will enable the plaintiff to defeat the motion and that the discovery will not be unduly burdensome, the court may order that specified discovery be conducted. Such an order may be conditioned upon the plaintiff paying any expenses incurred by the defendant in responding to such discovery."

This was clearly requested an ignored. The defendants work blocks from the courthouse and their testimony would have been a minor inconvenience and the plaintiff request for inter-office email discovery could have been delivered through an email or thumb drive.

The discovery would have further supported the following reasons to deny the Anti-SLAPP claim based on the defendant's clear statements that they acted in their own commercial interests.

*"The term "issue of public interest" shall not be construed to include private interests, such as statements directed primarily toward protecting the speaker's commercial interests rather than toward commenting on or sharing information about a matter of public significance."*

---------------------------------

**District of Columbia Anti-SLAPP Acts & Laws**

Last updated 2017-07-16

DC ST § 16-5501. Definitions.

For the purposes of this chapter, the term:

(1) "Act in furtherance of the right of advocacy on issues of public interest" means:

(A) Any written or oral statement made:

(i) In connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or

(ii) In a place open to the public or a public forum in connection with an issue of public interest; or

(B) Any other expression or expressive conduct that involves petitioning the government or communicating views to members of the public in connection with an issue of public interest.

(2) "Claim" includes any civil lawsuit, claim, complaint, cause of action, cross-claim, counterclaim, or other civil judicial pleading or filing requesting relief.

(3) "Issue of public interest" means an issue related to health or safety; environmental, economic, or community well-being; the district government; a public figure; or a good, product, or service in the market place. The term "issue of public interest" shall not be construed to include private interests, such as statements directed primarily toward protecting the speaker's commercial interests rather than toward commenting on or sharing information about a matter of public significance.

(4) "Personal identifying information" shall have the same meaning as provided in § 22-3227.01(3).

DC ST § 16-5502. Special motion to dismiss.

(a) A party may file a special motion to dismiss any claim arising from an act in furtherance of the right of advocacy on issues of public interest within 45 days after service of the claim.

(b) If a party filing a special motion to dismiss under this section makes prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest, then the motion shall be granted unless the responding party demonstrates that the claim is likely to succeed on the merits, in which case the motion shall be denied.

(c)

(1) Except as provided in paragraph (2) of this subsection, upon the filing of a special motion to dismiss, discovery proceedings on the claim shall be stayed until the motion has been disposed of.

(2) When it appears likely that targeted discovery will enable the plaintiff to defeat the motion and that the discovery will not be unduly burdensome, the court may order that specified discovery be conducted. Such an order may be conditioned upon the plaintiff paying any expenses incurred by the defendant in responding to such discovery.

(d) The court shall hold an expedited hearing on the special motion to dismiss, and issue a ruling as soon as practicable after the hearing. If the special motion to dismiss is granted, dismissal shall be with prejudice.

DC ST § 16-5503. Special motion to quash.

(a) A person whose personal identifying information is sought, pursuant to a discovery order, request, or subpoena, in connection with a claim arising from an act in furtherance of the right of advocacy on issues of public interest may make a special motion to quash the discovery order, request, or subpoena.

(b) If a person bringing a special motion to quash under this section makes prima facie showing that the underlying claim arises from an act in furtherance of the right of advocacy on issues of public interest, then the motion shall be granted unless the party seeking his or her personal identifying information demonstrates that the underlying claim is likely to succeed on the merits, in which case the motion shall be denied.

DC ST § 16-5504. Fees and costs.

(a) The court may award a moving party who prevails, in whole or in part, on a motion brought under § 16-5502 or § 16-5503 the costs of litigation, including reasonable attorney fees.

(b) The court may award reasonable attorney fees and costs to the responding party only if the court finds that a motion brought under § 16-5502 or § 16-5503 is frivolous or is solely intended to cause unnecessary delay.

DC ST § 16-5505. Exemptions.

This chapter shall not apply to any claim for relief brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct from which the claim arises is:

(1) A representation of fact made for the purpose of promoting, securing, or completing sales or leases of, or commercial transactions in, the person's goods or services; and
(2) The intended audience is an actual or potential buyer or customer.


**Misstatements, False Statements and Fabricated Evidence Cited by the Judge(s)**


"While not specified, the complaint appears to assert claims for fraud and negligence, the

same causes of actions raised in Mr. Lawless's seven prior suits. However, Mr. Lawless, in opposition, avers that "claims of fraud and negligence...are not a part of this civil case at all." Pl. Opp'n, dated Nov. 3, 2021. Rather, Mr. Lawless clarifies that his only cause of action against the Defendants is for aiding and abetting. Id."

**No where in the complaint does the Defendant allege fraud or negligence as a cause of action. Here the judge is trying to tie the small claims action to his decision to dismiss but in the very next paragraph states this "However, Mr. Lawless, in opposition, avers that "claims of fraud and negligence...are not a part of this civil case at all." The Judge in this case never identified anything written in the compliant by the Plaintiff to support his assertion that negligence and fraud were a part of the complaint. The Judge seems to be say that Negligence and Fraud could have been a part of the complaint and that was good enough for him.**

"Plaintiffs' complaint arises from Defendants' **failure to publish certain** "evidence" related to the Puerto Rico bankruptcy and alleged involvement in a criminal cover-up.

**This is just a fabricated lie to support the application of the Anti-SLAPP Statute. No where in the civil suit will you find such a claim and it is critical for the Judge to claim this to justify the application of the Anti-SLAPP Statute. The plaintiff was claiming a cover-up and non-action. None of which are protected by the Anti-SLAPP stature.**

Judge Claims Res Judicata as further support for his dismissal with prejudice.

"Res judicata "precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action"

The Judge Further Claims in his dismissal;

Mr. Lawless's complaint is still barred because any claim he is now raising in this case could have been raised in the previous seven consolidated cases.

**The small claims cases were filed for negligence and fraud. The civil case only claimed a cause of action for Aiding and Abetting which presupposes participation in criminal activity. Significantly different than the small claims cause of action. If the plaintiff had sufficient evidence to claim Aiding and Abetting when he filed the small claims actions, he would have. Between when the small claims actions were filed and when the civil suit was filed, the**

United States Government dropped their claims in the case of Richard R. Lawless V. Gary Gensler (The SEC Chairman) that the crimes didn't happen, that there were no payoffs to DOJ personnel and that the SEC and DOJ failed to prosecute, investigate or regulate.  They now acknowledge that these things happened and simply claimed that the SEC Commissionaire was within his authority to ignore all that.  There was also further Freedom of Information request fulfillment by the SEC that supported claims of Aiding and Abetting by the Post. The Judge would not know any of this because he refused to hold any hearings.

12(b)(6)

Dismissal of a complaint for failure to state a claim upon which relief can be granted should

only be awarded if "it appears beyond doubt that the plaintiff can prove <u>no set of facts</u> in support of his claim which would entitle him to relief.'"

**This is nonsense.  None of the Judges reviewed any of the evidence according to court records.  Evidence provided by the Government of Puerto Rico, The United States Government, The Department of Justice, The Securities and Exchange Commission and Freedom of Information Request documents.  This is a PURE Lie, a misstatement of a material fact.**

"Plaintiffs who wish to survive a motion to dismiss under Super. Ct. Civ. R. 12(b)(6) must

provide "enough facts to state a claim to relief that is plausible on its face."

**More misstatements, fabrications and lies.  The evidence even included a sixty-minute video <u>produced with the help and cooperation of the SEC and DOJ</u> outlining the crimes and the events leading to the bankruptcy and bond default.  Plaintiff was a recognized SEC Whistleblower and had been working with the SEC for six years on this matter. All evidence that was submitted to the court and ignored.**

Here the Judge is hanging himself with his own quotes.

"A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

**Plaintiff provided email evidence from Post employees and requested the testimony of those employees which would have further supported the email evidence. All ignored by the Judges. The defendants would have admitted they engaged in the cover-up to avoid going to war with the United State Government, an expense they could not afford.**

Respectfully Submitted;

Richard R. Lawless

Plaintiff

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

COMMERCIAL SOLAR POWER, INC., *et al.*    :    Case Number:  2021 CA 003519 B

v.    :    Judge: Hiram E. Puig-Lugo

WP COMPANY, LLC, *et al.*    :

## ORDER

This matter comes before the Court upon consideration of Defendants' Special Anti-SLAPP Motion and Rule 12(b)(6) Motion to Dismiss, filed October 29, 2021, Plaintiffs' Statements in Opposition, filed October 20, 2021, October 29, 2021, November 3, 2021, and November 10, 2021, and Defendants' Reply, filed November 10, 2021.[1,2]  The Court has considered the pleadings, the relevant law, and the entire record.  For the following reasons, the Motion is granted.

### Background

The instant case is the latest in a series of litigation brought by Plaintiff Richard Lawless against individual reporters or editors with the Washington Post ("the Post") complaining about the Post's coverage of the Puerto Rico bankruptcy, in which he lost money.

In May and June of 2021, Mr. Lawless filed seven substantially identical cases against individual reporters or editors with the Post.  In response, the defendants moved to (1) consolidate the seven cases, (2) dismiss them under both Rule 12(b)(6) and the District of Columbia Anti-Strategic Lawsuits Against Public Participation Act ("D.C. Anti-SLAPP Act"),

---

[1] Plaintiffs' first Statement in Opposition appears to have been filed in response to Defendants' 12-I request. Subsequently, on October 29, 2021, after Defendants' Motion was filed, Plaintiffs filed a revised Statement in Opposition. Then, on November 3, 2021 and November 10, 2021, Plaintiffs e-mailed additional Statements in Opposition.

[2] While noted on the docket as "Motions", Plaintiffs' October 20, 2021 and October 29, 2021 filings are statements in response to Defendants' Motion. Accordingly, the Court treats them as Statements in Opposition and reviews them in coordination with Defendants' Motion.

1

and (3) enjoin future actions against the Post and its employees.  On September 23, 2021, Judge

Jones Bosier granted defendants' motion to consolidate and dismissed Plaintiff Lawless's claims

with prejudice pursuant to the D.C. Anti-SLAPP Act and Rule 12(b)(6).  Thereafter, on October

4, 2021, Judge Epstein affirmed Judge Bosier's ruling and granted defendants' motion for an

injunction barring Mr. Lawless from filing new lawsuits without prior court approval.  Four days

prior to Judge Epstein's Order, this instant suit was filed.

The instant suit is brought by Mr. Lawless, acting *pro se*, on behalf of himself and his

company, Commercial Solar Panel, Inc. against the Post and sixty-seven (67) Post employees.

As with the prior cases, Plaintiffs' complaint arises from Defendants' failure to publish certain

"evidence" related to the Puerto Rico bankruptcy and alleged involvement in a criminal cover-

up.  Plaintiffs seek $482,000,000.00 in damages.  Defendants now move to dismiss this case on

several grounds.  The Court discuss below.

### Analysis

### 1.  Corporate Plaintiff

As discussed above, the complaint is brought by Mr. Lawless, acting *pro se*, on behalf of

himself and Commercial Solar Power, Inc.  Commercial Solar Power, Inc. is a California

corporation.  Compl. ¶ 8; Mot. to Dismiss Ex. B.  Mr. Lawless makes no representations that he

is an attorney licensed to practice law in the District of Columbia.  Therefore, while Mr. Lawless

may represent himself, he cannot represent Commercial Solar Power, Inc.  As a corporation,

Commercial Solar Power, Inc. "chose to accept the advantages of incorporation and must now

bear the burdens of that incorporation."  *Shamey v. Hickey*, 433 A.2d 1111, 1113 (D.C. 1981).

Therefore, Commercial Solar Power, Inc. *must* have an attorney present the corporation's legal

claims. Accordingly, the Court dismisses the complaint on behalf of Commercial Solar Power, Inc.

### 2. *Res Judicata*

*Res judicata* "precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first proceeding." *Harnett v. Washington Harbour Condominium Unit Owners' Ass'n*, 54 A.3d 1165, 1173 (D.C. 2012) (quoting *Carr v. Rose*, 701 A.2d 1065, 1070 (D.C. 1997)). "Under the doctrine of *res judicata*, a final judgment on the merits of a claim bars relitigation of the same claim[.]" *Patton v. Klein*, 746 A.2d 866, 869 (D.C. 1999). In determining whether two cases are based on the same "cause of action," courts in this jurisdiction have considered "the nature of the two actions and the facts sought to be proved in each one." *Shin v. Portals Confederation Corp.*, 728 A.2d 615, 619 (D.C. 1999). The doctrine of *res judicata* does not apply when the first judgment has been reversed on appeal. *See, e.g., Adams v. Woodner Co.*, 475 A.2d 393, 397 (D.C. 1984).

On September 23, 2021, Judge Jones Bosier dismissed with prejudice Mr. Lawless's claims against seven defendants sued in the instant case.[3] Judge Jones Bosier's ruling was affirmed by Judge Epstein on October 4, 2021. Mr. Lawless does not dispute that the previous cases against these seven defendants were dismissed with prejudice. Pl. Opp'n, dated Nov. 10, 2021. Nevertheless, Mr. Lawless notes that he has appealed Judge Jones Bosier and Judge Epstein's rulings and argues that "the likelihood that the Appellate Court will vacate the earlier ruling is reasonable to assume." *Id.*

---

[3] The seven defendants which Mr. Lawless previously brought suit against are: (1) Kat Downs Mulder; (2) Cameron Barr; (3) David Fallis; (4) David Bruns; (5) Jeff Leen; (6) Phoebe Connelly; and (7) Micah Gelman.

A pending appeal of a different case has no bearing on whether *res judicata* applies to the
instant case. Should the Court of Appeals remand the seven consolidated cases back to the
Superior Court, Mr. Lawless will be able to pursue his claims against these seven defendants in
*those* cases. But because Judge Bosier issued a final judgment on the merits against Mr. Lawless
on his causes of action against these seven defendants, *res judicata* applies as the instant case is
based on the same set of operative facts. To the extent that the instant case raises different
claims against these seven defendants, Mr. Lawless's complaint is still barred because any claim
he is now raising in this case could have been raised in the previous seven consolidated cases.
Accordingly, Mr. Lawless's claims against (1) Kat Downs Mulder; (2) Cameron Barr; (3) David
Fallis; (4) David Bruns; (5) Jeff Leen; (6) Phoebe Connelly; and (7) Micah Gelman are
dismissed.

### 3.   Rule 12(b)(6)

Dismissal of a complaint for failure to state a claim upon which relief can be granted should
only be awarded if "it appears beyond doubt that the plaintiff can prove no set of facts in support
of his claim which would entitle him to relief.'" *See e.g.*, Super. Ct. Civ. R. 12(b)(6); *Fingerhut
v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803 (D.C. 1999). When considering a motion to
dismiss a complaint for failure to state a claim, a Court must "construe the facts on the face of the
complaint in the light most favorable to the non-moving party, and accept as true the allegations
in the complaint." *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 174 (D.C. 1996). A court should not
dismiss a complaint merely because it "doubts that a plaintiff will prevail on a claim." *See Duncan
v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 210 (D.C. 1997).

A pleading must contain a "short and plain statement of the claim showing that the pleading
is entitled to relief." *See e.g.*, Super. Ct. Civ. R. 8(a); *Ashcroft v. Iqbal*, 555 U.S. 662, 667-678

4

(2009). Plaintiffs who wish to survive a motion to dismiss under Super. Ct. Civ. R. 12(b)(6) must

provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007) (plaintiffs must "[nudge] their claims across the line from

conceivable to plausible"). *See also Mazza v. Housecraft LLC*, 18 A.3d 786, 791 (D.C. 2011)

(holding that "*Twombly* and *Iqbal* apply in our jurisdiction" because Super. Ct. Civ. R. 8(a) is

identical to its federal counterpart). The "plausibility" pleading standard does not require "detailed

factual allegations" at the initial litigation stage of filing the complaint, but "it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A claim

is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### Aiding and Abetting

While not specified, the complaint appears to assert claims for fraud and negligence, the

same causes of actions raised in Mr. Lawless's seven prior suits. However, Mr. Lawless, in

opposition, avers that "claims of fraud and negligence…are not a part of this civil case at all."

Pl. Opp'n, dated Nov. 3, 2021. Rather, Mr. Lawless clarifies that his only cause of action against

the Defendants is for aiding and abetting. *Id.*

The District of Columbia Court of Appeals "[has] not recognized the tort of aiding and

abetting in the District[.]" *Sundberg v. TTR Realty, LLC,* 109 A.3d 1123, 1129 (D.C. 2015)

(citing *Flax v. Schertler*, 935 A.2d 1091, 1107 (D.C. 2007)). It is not this Court's place to

recognize a tort that the Court of Appeals has declined to recognize on numerous occasions.

Accordingly, Mr. Lawless's complaint fails to state a claim upon which relief may be granted.

#### 4. The D.C. Anti-SLAPP Act

"A 'SLAPP' (strategic lawsuit against public participation) is an action 'filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing points of view.'" *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1226 (D.C. 2016) (quoting legislative history). The Anti-SLAPP Act tries "to deter SLAPPs by 'extend[ing] substantive rights to defendants in a SLAPP, providing them with the ability to file a special motion to dismiss that must be heard expeditiously by the court.'" *Id.* at 1235 (quoting legislative history). "Consistent with the Anti-SLAPP Act's purpose to deter meritless claims filed to harass the defendant for exercising First Amendment rights, true SLAPPs can be screened out quickly by requiring the plaintiff to present her evidence for judicial evaluation of its legal sufficiency early in the litigation." *Id.* at 1239.

"Under the District's Anti-SLAPP Act, the party filing a special motion to dismiss must first show entitlement to the protections of the Act by 'mak[ing] a *prima facie* showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest.'" *Id.* at 1227 (quoting D.C. Code § 16-5502(b)). "Once that *prima facie* showing is made, the burden shifts to the nonmoving party, usually the plaintiff, who must 'demonstrate[] that the claim is likely to succeed on the merits.'" *Id.* at 1227 (quoting § 16-5502(b)). "[O]nce the burden has shifted to the claimant, the statute requires more than mere reliance on allegations in the complaint, and mandates the production or proffer of evidence that supports the claim." *Id.* at 1233. "If the plaintiff cannot meet that burden [to establish a likelihood of success], the motion to dismiss must be granted, and the litigation is brought to a speedy end." *Id.* at 1227.

Defendants have made a *prima facie* showing. As Judge Epstein recognized, "the Post's reporting on the Puerto Rico bankruptcy plainly qualifies as written statements made in a public

forum in connection with an issue of public interest within the meaning of D.C. Code § 16-5501(I)(A)(ii)." *See* J. Epstein Order, dated Oct. 4, 2021 at 8. Therefore, the Post, and its reporters and editors, are protected by both the First Amendment and the Anti-SLAPP Act.

Because Defendants made its *prima facie* case, the burden shifts to Mr. Lawless to show that his claim is likely to succeed on the merits. He cannot carry this burden for two reasons: (I) his complaint does not state a claim on which relief can be granted, and (2) he did not offer any actual evidence demonstrating that his claim is likely to succeed on the merits. Accordingly, D.C. Code § 16-5502(d) requires that Mr. Lawless's complaint be dismissed with prejudice.

### Conclusion

For the foregoing reasons, it is this 17th day of November 2021, hereby:

**ORDERED** that Defendants' Special Anti-SLAPP Motion and Rule 12(b)(6) Motion to Dismiss is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' complaint is **dismissed with prejudice**; and it is further

**ORDERED** that all future events are **vacated** and this matter is **closed**; and it is further

**ORDERED** that Plaintiffs' Motion for Court Ordered Mediation, filed November 4, 2021 is **denied as moot**; and it is further

**ORDERED** that Plaintiffs' Motion for Immediate Denial of Defendants Anti-SLAPP Motion, filed November 11, 2021 is **denied as moot**.

**SO ORDERED**.

**Judge Hiram E. Puig-Lugo**
**Associate Judge**
(*Signed in Chambers*)

Copies *Via* CaseFile Xpress:
All counsel of record
Richard Lawless

Filed
D.C. Superior Court
09/30/2021 13:32PM
Clerk of the Court

Superior Court of the District of Columbia
CIVIL DIVISION – Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001
Telephone: (202) 879-1133 Website:
www.dccourts.gov

Case No.
_____ 2021 CA 003519 B

**COMPLAINT**
Jurisdiction of this Court is founded on D.C. Code § 11-921.

**Plaintiff**
Richard R. Lawless
30279 Redding Avenue
Murrieta, CA 92563
951-440-5230
richardrlawless@gmail.com

**Additional Plaintiff**
Commercial Solar Power, Inc.
30279 Redding Avenue
Murrieta, CA 92563
951-440-5230
richardrlawless@gmail.com

**Defendant**
Wp Company, LLC
DBA The Washington Post
1301 K Street Northwest
Washington, DC 20071-0004
202-334-6242
sally.buxbee@washpost.com

**Additional Defendants**
Washington Post Senior Management Team

| | |
|---|---|
| **Sally Buzbee**<br>Executive Editor<br>**1301 K Street NW,**<br>**Washington DC 20071**<br>202.334.6000<br>sally.buzbee@washpost.com | **Cameron Barr**<br>Managing Editor (News and features coverage)<br>**1301 K Street NW,**<br>**Washington DC 20071**<br>cameron.barr@washpost.com<br>202-334-7959 |

| Washington DC 20071<br>Autumn.brewington@washpost.com | Washington DC 20071<br>mark.iasswell@washpost.com |
|---|---|
| **Eli Lopez**<br>**Senior Editor**<br>**1301 K Street NW,**<br>**Washington DC 20071**<br>Eli.lopez@washpost.com<br>202-334-7333 | **Christian Caryl**<br>**Democracy Post Editor**<br>**1301 K Street NW,**<br>**Washington DC 20071**<br>Christian.caryl@washpost.com<br>202-334-4652 |
| **Jamie Riley**<br>**Local Editor**<br>1301 K Street NW,<br>Washington DC 20071<br>Jamie.rileykolsky@washpost.com<br>202-334-6215 | **Trey Johnson**<br>**Chief Multiplatform Editor**<br>1301 K Street NW,<br>Washington DC 20071<br>Trey.johnson@washpost.com<br>202-334-9245 |
| **Becca Clemons**<br>**Director Operations**<br>1301 K Street NW,<br>Washington DC 20071<br>rebecca.clemons@washpost.com<br>202-334-5124 | **Kate Woodsome**<br>**Senior Producer**<br>1301 K Street NW,<br>Washington DC 20071<br>Kate.woodsome@washpost.com<br>202-334-4972 |
| **Nana Efua Mumford**<br>**Editorial Talent Manager**<br>1301 K Street NW,<br>Washington DC 20071<br>NanaEfua.Mumford@washpost.com<br>202-334-6162 | END |

## Statement of Claim

Plaintiff is suing the Washington Post Newspaper (Wp Company, LLC) and individual members
of its leadership team for common law tort of Aiding and Abetting which has been upheld by
the numerous Washington D.C. Appellate Courts in cases involving civil tort damages and is
further supported by the Restatement of Torts I, II & III.

The plaintiff alleges that the defendants in this case have participated in over sixty major financial felonies and the on-going cover-up of those crimes. These actions directly contributed to $482,000,000 in financial damages incurred by the plaintiff stemming from the defendant's continued participation in these illegal acts. The plaintiff will also be seeking punitive damages based on the defendants six year participation in this criminal scheme and the hundreds of opportunities the plaintiff gave all defendants to do the right thing.

The genesis for this case arises from the nations largest municipal bond default and municipal bankruptcy in Puerto Rico. The plaintiff's company, Commercial Solar Power, Inc. secured a contract to build a solar power plant for the Puerto Rico Electric Utility Company (PREPA), just one of about a dozen municipal agencies in Puerto Rico involved with this fraud. The plaintiff, Richard Lawless invested $42,000,000 into the project.

Although PREPA had BBB+ credit ratings from Moody's, Fitch and S&P Global it was not long before the utility had trouble paying its bills. That quickly escalated into their bond default and eventual bankruptcy. It made no sense to us how something like this could happen to such a highly rated utility company so quickly, so we investigated.

Our investigation uncovered an island wide Ponzi Scheme involving all of the municipal agencies, extortion, bribery, mail fraud, securities fraud, wire fraud, theft on a grand scale and many other criminal acts that directly led to the bond default and bankruptcy. Crime on a scale that is rarely seen.

Plaintiff immediately reported these crimes to the Department of Justice and filed a whistleblower complaint with the Securities and Exchange Commission on July 30, 2015. Plaintiff's whistleblower complaint was accepted by the SEC as credible and Plaintiff was assigned a senior investigative attorney by the SEC that he has worked with for the past six years.

By late 2015, plaintiff was starting to email the Washington Post's leadership team evidence about all these crimes. These emails, packages, videos and books continued to be sent to the Washington Post leadership team through the current day. All this discovery was covered up while the Washington Post knowingly ran articles that they knew were untrue and misleading. To this day the Washington Post and all defendants failed to report this information to the authorities (a felony in itself) and has intentionally keep this information from their readers, subscribers and the American public aiding the criminals in their efforts to cover-up the crimes.

The Washington Posts misdirection in articles left the fifty million victims believing that there was no one responsible for their forty billion dollars in stolen money, it was like an act of God, you can't really sue anyone to recover your losses. Plaintiffs will show that this cover-up and

misdirection benefitted Politicians who were involve with the crimes and all the major Wall Street banks that participated and would have been sued for tens of billions of dollars.

The plaintiff will show that when this long-running seventy-four-billion-dollar Ponzi Scheme fell apart, the Wall Street Banks, Credit Rating Agencies and their Law Firms flooded the U.S. Senate with one hundred and twenty million dollars in campaign contributions. These contributions were intended to buy protective legislation (PROMESA) and influence with the Department of Justice and the Securities and Exchange Commission to prevent investigations, prosecutions and regulatory action. To this day the DOJ and SEC have failed to act but both organizations now admit that the crimes happened.

Without the Washington Post's six-year commitment to the cover-up and misdirection of these criminal activities, all of the Bank's campaign contributions and all of the Senators actions would not have been sufficient to protect the criminals. The Washington Post was a key and necessary player in this criminal scheme.

Plaintiff will provide testimony from the Washington Post's own journalists that the Post would not allow the paper to print any of these facts or investigate the matter at all. You will here similar testimony from a major Wall Street Journal reporter and New York Times reporter that state the following;

**"We cannot afford to go to war with the United State Government"**

**"There are too many Politicians involved to touch this"**

**"We would never get another interview or tip from Capitol Hill"**

This clearly flies in the face of any attempt to use the Anti-SLAPP Statute to dismiss this case when the Washington Post was acting in its own <u>private corporate interests</u>. They didn't want to get sued, they wanted to maintain their good relationships on Capitol Hill and on Wall Street. Why else would they ignore a Pulitzer Prize Winning story that would drive millions of new readers to their paper and unlimited cable news coverage? The newspaper and its leadership are fully committed to this criminal enterprise.

The plaintiff, with the help of the Department of Justice and the Securities and Exchange Commission will present a sixty-minute, videotaped PowerPoint presentation outlining all the criminal acts and many of the criminals. This information has been given to the Washington Post and its leadership team dozens of times since 2016.

The Anti-SLAPP legislation was not designed to be used to shield criminal participation from tort claims. The testimony, emails and actions of the Washington Post employees will clearly show

the Post acted in its own commercial interest. Lastly, the Anti-SLAPP legislation requires the
court to consider all of the plaintiffs claims as true and determine if there is a likely chance the
Plaintiff would prevail before allowing for anti- SLAPP dismissal.

In consideration of that I offer the court the following additional facts.

1) Plaintiff has been working with the SEC for six years on this
2) Plaintiff has filed an FTCA claim against the SEC for failing to act on these securities
   violations.  The claim was accepted and found to be credible and the SEC is negotiating a
   confidential settlement with the plaintiff.
3) The Plaintiff worked with the Department of Justice for six years on this.
4) Plaintiff has filed an FTCA claim against the DOJ for failing to prosecute. The claim was
   accepted and found to have merit.
5) The plaintiff has been working with whistleblowers from the CIA, NSA and British
   Intelligence for six years. In that process the Plaintiff was informed by multiple sources
   that the CIA recorded telephone conversations for ten years related to wire transfers
   coming out of Puerto Rico. Plaintiff has been told the phone transcripts identify
   payments to politicians and DOJ officials designed to prevent investigations and
   prosecutions.  Plaintiff is currently seeking the CIA transcripts through Freedom of
   information requests.
6) Plaintiff has filed an FTCA claim against Senator Warner and Senator, now VP Harris.
   Both claims were accepted (not denied).  The claims speak to the campaign payments
   they received and the actions they took.
7) The plaintiff had a twitter conversation with President Trump while he was in office.  In
   one tweet the plaintiff asked the President why the Senators, the DOJ, the SEC and the
   Press are ignoring all this crime. His response was, and I quote "Because they are all
   involved".  You can you see the Presidents comments in the plaintiff's book, Capitol Hills
   Criminal Underground"?
8) The Puerto Rico Senate released a report claiming much of this criminal activity has
   happened and requested the SEC and DOJ to act.  Neither the DOJ or the SEC has acted
   on their request.
9) The Government of the United States also released an FOMB Investigative report listing
   much of this criminal activity.
10) The plaintiff wrote and released a book called "Capitol Hills Criminal Underground" in
    2019 which spells out this criminal conspiracy and names over three hundred
    government officials and senior U.S politicians that participated in these crimes (all with
    three sources to support the allegations) and the book has not been challenged nor has
    the plaintiff been sued.

The plaintiff makes a number of claims that have nothing to do with Anti-SLAPP provisions;
"The defendants did not report the crimes", The defendants hid the evidence of the

crimes". In the case below, you can clearly see that two courts affirmed the dismissal of the anti-SLAPP defense for those very reasons.

"Amendment and therefore protected by both the anti-SLAPP statute and the "litigation privilege" (Civil Code § 47(b)). The trial court denied the motion and the appellate court affirms. According to the court, the cause of action lies in nonaction and delays, not in any specific statement or writing by the company, and none of this conduct involved the company's right of petition."

The defense will attempt to assert some **first amendment rights** but according to the Supreme Court

**"The First Amendment does not protect violent or underlined unlawful conduct, even if the person engaging in it intends to express an idea. United States v. O'Brien, 391 U.S. 367, 376 (1968)."**

The next strategy the defense will engage in is that the Newspapers Employees or the Newspaper has a "duty to the plaintiff". Whether or not a duty on behalf of the defendant is necessary for all claims made by the plaintiff will be a worthy discussion between the plaintiff, the defendant and the judge. I would like to opine here so the court will have an opportunity to consider some of the plaintiff's arguments.

To determine if a defendant has a duty to the plaintiff one would have to consider a professional journalists "standard of care". The defense would like the court to believe the defendants can not have breached a duty to me because they have no standard of care. That is not true.

The premier national professional organization for professional journalists is "The Society for Professional Journalists'" This association lays out the standard of care for all professional journalists. They state the following:

Ethical journalism should be accurate and fair. Journalists should be honest and courageous in gathering, reporting and interpreting information. Journalists should:

1) Be vigilant and courageous about holding those with power accountable. Give voice to the voiceless.
2) Recognize a special obligation to serve as watchdogs over public affairs and government. Seek to ensure that the publics business is conducted in the open, and that public records are open to all.
3) Avoid conflicts of interest, real or perceived. Disclose unavoidable conflicts.
4) Deny favored treatment to advertisers, donors or any other special interests, and resist internal and external pressure to influence coverage.
5) Expose unethical conduct in journalism, including within their organizations.

If this is the defendant's standard of care, who might they own this duty to? The plaintiff is a
Washington Post reader, subscriber, American citizen and a victim. If not the plaintiff than what
special group do journalist owe this duty to?

Based on the plaintiff's claims the defendants breached all of the listed duties.

Whether it is a medical office, law office or any other professional group, the standard "Duty of
Care" almost always originates in the professional organizations that support that industry.
This duty of care is no less important to journalists than the American Medical Associations
"duty of care" is to doctors. How many nurses and doctors are sued every year for breaching a
duty of care that was created by a professional organization. How many small companies have
no duty of care but refer their employees to the standard established by their industries
professional support organizations. The Washington Post is a member of this organization and
members are expected to comply with the association's standards.

The last point I want to make in this complaint is that without the Washington Post's six-year,
on-going commitment to this cover-up none of it would have been possible. The plaintiff may
have known about the crimes but without public knowledge of the crimes, the DOJ did not and
will not act, the SEC did not and will not act, the rest of the press will not cover it and no lawyer
in their right mind is going to an accept a case based on Richard Lawless's claims. Knowledge of
the crimes by Mr. Lawless has not helped him secure a legal team or get any major newspaper
to cover these issues. Any effort made by Mr. Lawless would be met with opposition by the
SEC, DOJ and the Press. It would be Richard Lawless against the world and it has been. Richard
Lawless's knowledge of the crimes has been trumped at every turn by defendants like the
Washington post who claim there is nothing to this.

I respectfully pray the court will consider everything that has been said here and give the
plaintiff and defendant and opportunity to have this case decided on its merits and not
dismissed out of hand by inapplicable motions.


### Requested Relief

### Other Items

The court should be aware that the plaintiff has filed FTCA claims against the Department of
Justice for failing to prosecute and the SEC for failing to regulate these issues and Kamala Harris
(Plaintiffs State Attorney General, now VP) for failing to prosecute. The claims were all
accepted as valid and plaintiff is currently negotiating confidential settlement agreements.
Whether or not an agreement will be signed is unknown at this time. The court should also
know that after plaintiff provided his States Attorney General (Harris) with a mountain of
criminal evidence, she accepted campaign contributions from the "criminals" and never
prosecuted anyone.

Today the SEC and the DOJ admit these crimes took place. The two agencies participated with the plaintiff to make a sixty-minute video recapping all of the securities fraud and cover-ups associated with these crimes. The video will be presented as evidence.

The plaintiff, as one of his first actions, attempted to hold members of the press, specifically, the Washington Post leadership team, civilly libel for their role in their continued cover-up of the crimes. It was plaintiffs second pro-se attempt as a plaintiff and the plaintiff failed on a number of levels to properly state his case.  Because of that, the court ruled against the eight small claims cases.

Con't

Two years ago, or so, the plaintiff filed a large number of small claims against Senators in Temecula California and quickly withdrew all of them for lack of jurisdiction. Since that time a number of Freedom of Information requests (FOIA) have been fulfilled and the plaintiff now has a mountain of evidence to support his civil claims and a better understanding of venue and jurisdiction.

SIGNATURE To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

_____                    9-22-21
Signature                                    Signature Date

- Notary Jurat Attached
- Evidence Exhibits will be Filed Shortly

Subscribed and sworn to before me this _____ day of _____
20_____.  _____ (Notary
Public/Deputy Clerk)



A notary public or other officer completing this certificate verifies only the
identity of the individual who signed the document to which this certificate is attached,
and not the truthfulness, accuracy, or validity of that document.

State of California, County of __Riverside__ 22nd
Subscribed and sworn to (or affirmed) before me on this __22__ day
of __Sept.__     2021 by __RICHARD LAWLESS__
proved to me on the basis of satisfactory evidence to be the
person(s) who appeared before me.

Signature _____ (seal)

YAN ZHANG
COMM # 2337298
RIVERSIDE County
California - Notary Public
Comm. Expires Nov. 13, 2024

## Superior Court of The District of Columbia

### Civil Actions Branch
### Richard Lawless V. Gary Gensler (SEC Chairman)
### Case #2021 CA 003421 B

Plaintiff Evidence Exhibit One

*Richard Lawless (Plaintiff) is suing Gary Gensler for participating in (Aiding and Abetting) up to sixty major felonies related to the Puerto Rico bond default and bankruptcy. Without Mr. Gensler's participation these on-going crimes would not have been possible.*

The following PowerPoint presentation (video) was made with the help and cooperation of the Securities and Exchange Commission and the Department of Justice before U.S. Senators accepted bribes and pressured the SEC and DOJ to stop all investigations, prosecutions and regulatory actions. **The video outlines over sixty major felonies (securities fraud) that caused the Puerto Rico bond default.**

Video/PowerPoint Link

9 27 16 Commercial Solar Power Press Conference – YouTube

https://www.youtube.com/watch?v=Tysqoqf9B7I

-

When the Wall Street Banks realized that they could be held civilly and criminally liable for these crimes they flooded the U.S. Senate with over $120,000,000 in donations and Senators responded with protective legislation and by interfering with the missions of the SEC and DOJ to make sure no investigations, prosecutions or regulatory actions were taken against their contributors.  You will see detailed information about the bribes in additional evidence exhibits.

As a committed member of the "Washington DC Swamp" Gary Gensler covered up these crimes to further support the criminals (Wall Street Firms).

The SEC received this video as early as September 2016 and over a dozen more times between 2016 and 2021.

## Superior Court of The District of Columbia

### Civil Actions Branch
### Richard Lawless V. Wp Company, LLC (Washington Post)
### Case #2021 CA 003519 B

#### Plaintiff Evidence Exhibit Two

### RECORDED PHONE CONVERSATIONS

*Richard Lawless (Plaintiff) is suing the Washington Post and its management team for participating in (Aiding and Abetting) up to sixty major felonies related to the Puerto Rico bond default and bankruptcy. Without Washington Post's participation these on-going crimes would not have been possible.*

When the plaintiff (Richard Lawless) started to publish articles about the findings of his company's investigation he started to receive "blocked" phone calls from whistleblowers in the FBI, SEC, NSA and CIA. They would often comment that his article was so close to describing what kind of criminal activity was taking place but that I was missing "this piece" of the story. These tips, all different and often new information for the plaintiff led to a major finding.

The CIA had been recording telephone conversations in Puerto Rico for years. Telephone calls related to large "out of country wire transfers". These calls or I should say this warehouse of calls collected over many years details how money and assets were being stolen from Puerto Rico municipal agencies, monetized and wired overseas to be laundered. The calls identified politicians and DOJ officials that would receive regular payoffs to make sure there were no investigations or prosecutions. The bribes or the extorted funds were often sent to close family members to help better hide their respective roles in this criminal enterprise. The money and assets were in the many billions of dollars and were funded originally from the fraudulent Puerto Rico bonds.

The CIA offered the FBI Inspector General these recordings and he denied to accept them. The plaintiff offered the Inspector General these recordings on behalf of the CIA and the Inspector General declined to accept them.

#### This is the important part

*The plaintiff by now an accomplished investigative journalist reached out to two newspaper editors. The editors were able to contact resources they each had in the intelligence community and confirm that the warehouse of recorded phone calls existed and what the general content of the calls were. When they compared notes at a later date, what they were told from three unrelated intelligence officials was nearly identical. They now have three sources each with their own intelligence assets telling all of them the same story.*

The plaintiff shared this with the Washington Post's management team in 2016, 2017, 2018, 2019, 2020 and in 2021. He was ignored.

The plaintiff has started a Freedom of Information request process to get the phone transcripts from the CIA.

1. Plaintiff requested files from the CIA
2. Plaintiff received confirmation of his request from the CIA
3. CIA responded by saying they could neither confirm or deny the existence of the phone recordings and claimed "Executive Privilege.

A moment of common sense here. If the tapes did not exist the CIA would have denied they had them. If the tapes did not exist why is the CIA claiming Executive Privilege? The CIA's actions tell us all we need to know.

4. Plaintiff filed an appeal with the CIA

The CIA has a prescribed number of days to respond. If they deny plaintiffs appeal or fail to respond in the prescribed time limit, the plaintiff can ask the courts to force the release of the recordings. A question that should also be asked "Isn't the CIA "Aiding and Abetting" in these crimes against the American people by hiding the content of these calls?

It is pretty clear that the U.S. Senators involved with this have been funding their lifestyles and their campaigns for a very long time from this criminal activity. Everyone can be sure that Senator Chuck Schumer (Criminal Godfather), Mitch McConnel, Nancy Pelosi and Kevin McCarthy count on this criminal activity to fund their campaigns. You can be sure that they will use 100% of their corrupting influence with the courts to make sure they deny the release of this data. I would also assume they would like to avoid jail. This will be an uphill battle in the courts.

Attached are the documents exchanged with the CIA and some newspaper articles confirming the allegations laid out in this exhibit.

Newspaper Article

Richard Lawless | Observer

https://observer.com/author/richard-lawless/

# Did FBI and Justice Dept. Enable Puerto Rico's Financial Meltdown?

*I was told that Puerto Rico came on his agency's radar years ago because the head of the PREPA fuel purchase office started making direct calls to the then-president of Venezuela, Hugo Chavez. An agency listened in and found out that PREPA was buying sludge oil from Venezuela and billing the utility for high grade oil. The*

difference in value—hundreds of millions per year (today it would be $700 million a year and is said to be still going on)—was allegedly kicked back to the fuel office manager and distributed to politicians and government officials on the island.

As the unnamed government agency continued to listen in on the calls, the caller claimed it became clear that family members of Puerto Rican FBI agents and family members in the Puerto Rico U.S. Attorney's office were receiving payments based on these "kickbacks."

He went on to tell me that the Puerto Rico's FBI office and U.S. Attorney will do nothing about the oil kickback scheme and the bond rating scheme because they were participating in it. He went on to suggest that because of the separation laws regarding CIA activities and U.S. national law enforcement, there was not much he could do.

On Monday, a senior source in a related U.S. government agency, speaking to Caribbean News Now on condition of anonymity, **confirmed almost <u>word for word</u> what I had apparently been told.**

September 28, 2021

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
RE: FOIA Appeal Request

RE:  Appeal of FOIA Request F-2021-02265

Dear Coordinator:

Under the Freedom of Information Act, 5 U.S.C. subsection 552, I have requested information or records
on recorded conversations obtain during the surveillance of wire transfer activity in Puerto Rico.
Specially, wire transfers to Venezuela.

We are aware that in these capture phone calls there was information related to bribes paid to
Department of Justice Officials and Politicians to make sure there were no investigations or prosecutions
related to criminal activity taking place in Puerto Rico.

We believe that the American people have a right to know if its premier law enforcement agency is
actively participating in criminal activity.  If the CIA refuses to cooperate they will be actively aiding and
abetting in over sixty major financial felonies that contributed directly to the Puerto Rico Bankruptcy
and the largest bond default in American history.

There were fifty million Americans that had forty billion dollars stolen from them.  This is a topic of great
of great interest to the American people and now more than ever, transparency in this matter could not
be any more important.  If this counties politician and the DOJ are actively stealing billions of dollars
from the American people, we need to know.

I am an investigative journalist and a victim of this activity.  Fees should be waived based on the great
national interest on this subject and the lack of any commercial interest on behalf of the requester.

Sufficient evidence exists that these records exist and there are active RICO lawsuits winding their ways
through the courts that address the specific crimes that the CIA has been monitoring and recording.
Failure to comply with the FOIA legislation will find that request being arbitrated in Federal Court where
the FOIA statutes are highly likely to be enforced.

Sincerely,

*Richard R. Lawless*

Richard R. Lawless
30279 Redding Avenue
Murrieta, CA 92563
951-440-5230
richardrlawless@gmail.com



Central Intelligence Agency

Washington, D.C. 20505

8 September 2021

Richard Lawless
30279 Redding Avenue
Murrieta, CA 92563

Reference: F-2021-02265

Dear Requester:

This letter is a final response to your 23 August 2021 Freedom of Information Act (FOIA) request for **copies of any transcripts or internal memorandum related [to] the wiretapping or recording of phone calls related to the CIA's surveillance in Puerto Rico between the years of 2010 and 2018.**

We completed a thorough review of your request and determined that, in accordance with Section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request. The fact of the existence or nonexistence of such records is itself currently and properly classified and is intelligence sources and methods information protected from disclosure by Section 6 of the CIA Act of 1949, as amended, and Section 102A(i)(l) of the National Security Act of 1947, as amended. Therefore, your request is denied pursuant to FOIA exemptions (b)(1) and (b)(3).

As the CIA Information and Privacy Coordinator, I am the CIA official responsible for this determination. You may appeal this response to the Agency Release Panel, in my care, within 90 days from the date of this letter. Please explain the basis for your appeal.

Please be advised that you may also seek dispute-resolution services from the CIA FOIA Public Liaison or from the Office of Government Information Services (OGIS) of the National Archives and Records Administration. OGIS offers mediation services to help resolve disputes between FOIA requesters and Federal agencies. Please note, contacting CIA's FOIA Public Liaison or OGIS does not affect your right to pursue an administrative appeal.

| To contact **CIA** directly with questions or to appeal the CIA's response to the Agency Release Panel: | To contact the **Office of Government Information Services (OGIS)** for mediation or with questions: |
| --- | --- |
| Information and Privacy Coordinator<br>Central Intelligence Agency<br>Washington, DC 20505<br>TEL: (703) 613-1287<br>FAX: (703) 613-3007 | Office of Government Information Services<br>National Archives and Records Administration<br>8601 Adelphi Road – OGIS<br>College Park, MD 20740-6001<br>TEL: (202) 741-5770<br>FAX: (202) 741-5769 / ogis@nara.gov |



Central Intelligence Agency

Washington, D.C. 20505

25 August 2021

Richard Lawless
30279 Redding Avenue
Murrieta, CA 92563

Reference: F-2021-02265

Dear Requester:

On 24 August 2021, the Office of the Information and Privacy Coordinator received your 23 August correspondence seeking, under the Freedom of Information Act (FOIA), **copies of any transcripts or internal memorandum related [to] the wiretapping or recording of phone calls related to the CIA's surveillance in Puerto Rico between the years of 2010 and 2018.**

This letter serves to acknowledge that CIA received your request, and to further let you know that this office assigned your request the reference number provided above. Citing this number in future correspondence will allow us to more efficiently locate your case information.

In the event that we have questions or require additional information or clarification from you to proceed with processing your request, a representative will contact you. Unless you object, this office will search for CIA-originated records only, up to and including the date that the Agency begins its search.

If you wish to receive future correspondence electronically for a faster response, please provide this office with your email address.

To check the status of your request, please visit: https://www.cia.gov/readingroom/request/status and input the reference number provided above or call this office at (703) 613-1287.

Sincerely,

Mark Lilly
Information and Privacy Coordinator

**Superior Court of The District of Columbia**

**Civil Actions Branch**
**Richard Lawless V. Wp Company, LLC (Washington Post)**
**Case #2021 CA 003519 B**

Plaintiff Evidence Exhibit Three

**RICO Statutes**

*Richard Lawless (Plaintiff) is suing the Washington Post and its management team
for participating in (Aiding and Abetting) up to sixty major felonies related to the
Puerto Rico bond default and bankruptcy. Without Washington Post's
participation these on-going crimes would not have been possible.*

**Racketeer Influenced and Corrupt Organizations Act** (RICO) Passed in 1970, the
Racketeer Influenced and Corrupt Organizations Act (RICO) is a federal law
designed to combat organized crime in the United States. It allows prosecution
and civil penalties for racketeering activity performed as part of an ongoing
criminal enterprise.

The Rico Statutes were passed by Congress to fight organized crime, AKA the
Mafia. Things had gotten so bad in Puerto Rico that they resemble other
organized criminal enterprises like the Mafia. The DOJ refuses to investigate and
prosecute and the SEC refuses to regulate. This statute is used in the courts
almost exclusively by the Department of Justice and other law enforcement
agencies.

Unbelievably, the corruption at the municipal agencies in Puerto Rico (Bond
Issuers) had gotten so bad, underlined individual citizens filed a RICO lawsuit that has been
accepted by the courts and upheld by the courts, repeatedly.

# Court Upholds RICO Claims against
# Defendants in Puerto Rico Electric Power
# Authority Conspiracy Lawsuit

## Link to Case Information

Court Upholds RICO Claims against Defendants in Puerto Rico Electric Power Authority Conspiracy Lawsuit | Hagens Berman (hbsslaw.com)

https://www.hbsslaw.com/press/puerto-rico-electric-power-authority-prepa/court-upholds-rico-claims-against-defendants-in-puerto-rico-electric-power-authority-conspiracy-lawsuit

In the original suit, filed Feb. 24, 2015 in the U.S. District Court for the District of Puerto Rico, Puerto Rico residents and businesses accused PREPA and 20 total defendants of perpetuating an extensive fuel oil fraud, resulting in users of electricity in Puerto Rico being overcharged by more than $1 billion dollars for electricity since 2002. The suit states the defendant's received kickbacks and payments for colluding to raise fuel oil prices that were directly passed to users of electricity, by agreeing to use non-complaint fuel oil and falsifying lab tests.

Over a decade these crimes took place at the Puerto Rico Electric Power Authority (PREPA) just one of the corrupt municipal agencies in Puerto Rico. Billions of dollars were stolen, politicians were paid off, DOJ officials were paid off, according to CIA whistleblowers.

All this related directly to the Puerto Rico bond default and bankruptcy and the huge scope of crimes that make up this on-going criminal enterprise.

The Washington Post has been aware of this lawsuit and the extensive criminal activity described in the lawsuit for many years. It does not take a brain surgeon to see how this directly relates to the Puerto Rico bond default. For the most part it was covered-up by the Washington Posts management team and never mentioned in their misleading articles related to the bankruptcy.

With each evidence exhibit you will see the extensive knowledge the Washington Post had about the larger criminal activity that directly caused the Puerto Rico bond default and bankruptcy but the Post's commitment to all things Washington D.C. Swamp related knows no bounds. Six years and counting and the paper has no shame in covering up these massive criminal operations to protect the government agencies, politicians and their own commercial interests. To hell with their subscribers there are more personal business interests and political favoritism at play here. Protect the swamp is the Washington Post mantra.

## Superior Court of The District of Columbia

### Civil Actions Branch
### Richard Lawless V. Wp Company, LLC (Washington Post)
### Case #2021 CA 003519 B

Discovery – Evidence Exhibit 4

## The Puerto Rico Senate Hearing Testimony

In the early stages of the plaintiff's investigation into his personal and company losses, the plaintiff worked closely with a large number of Puerto Rico Senators. The plaintiff encouraged the Senators to hold a special hearing and even recommended a number of witnesses that should be cross-examined under oath.

The Senate held the special hearings and the results in the attached report were shared with everyone on the **Washington Post management team**, repeatedly over a number of years.

Here are some of the critical findings of this special hearing;

*"This Commission did not find a single instance from 1989 to the present whereby the consulting engineers recommended a revision of the rates, as required in Section706"*

Without the required rate increases the municipal agency could not repay its bonds.

*"Between the years of 2000 and 2012, PREPA Government Board authorized an issuance of bonds that raised said corporation the sum of $11,449,840,000, of which $2,720,441,711 were used for capital works while $164,649,287 were used to pay financial consultants and advisors who worked for PREPA. The remaining $8,564,749,002 was used for the prepayment of interests, as well as to refinance previous capital investments, and to capitalize their respective interests, **thereby***

*circularly refinancing its debts and interests, with complete disregard for the amortization of the original debt."*

This is the hallmark of a **Ponzi Scheme**.

*"Another finding was that the consulting engineers were not impartial to PREPA's refinancing scheme; because while **knowing that the electric power authority did not have sufficient income to comply with its financial obligations**, they allowed the use of funds allocated for capital improvements P a g e | 14 to be used in the maintenance of an infrastructure they knew was soon to become obsolete."*

One of many admissions the municipal agency issued bonds they know they could not pay for.

*"PREPA's current economic insolvency was the product of, among other factors, negligent acts on the part of its creditors, who in spite of knowing that PREPA's financial and competitive situation was weak, and knowing that its infrastructure was obsolete, they negligently granted PREPA a good credit rating; disregarding that by 2010, PREPA was <u>technically bankrupt</u>."*

An admission that the **credit ratings** were fraudulent.

*"This fact was corroborated by Arturo Ondina, CPA and consulting partner of Ernst &Young, firm who has audited PREPA for the past 12 years. This occurred while the financial consultants and consulting engineers indicated in their reports that the PREPA financial condition allowed it to issue more bonds, when the fiscal reality was that PREPA was not generating sufficient income to repay the debt."*

Ernst and Young admits to **false and misleading financial reports**.

*"This Commission realized that PREPA paid previous bondholders with capital received from new investors, to the point that owed interests were capitalized and re-grouped whenever a new debt was issued. The abovementioned was done to benefit the financial community that issued the debt and who today is collecting same, without any moneys having been invested in improvements to infrastructure, all to the detriment of the best interest of the people of Puerto Rico."*

PREPA leadership admitted to a perfectly defined all the hallmarks of a long-term **Ponzi Scheme**.

*"This goes to show that the financial intermediaries and the institutional holders, despite being fully aware of P a g e | 16 PREPA's fiscal situation, had no qualms with Unjustly Enriching themselves and with having the consequences of their negligent acts be paid for by the people of Puerto Rico."*

**This confirms that the credit ratings agencies and the major banks all knew PREPA to be technically bankrupt but participated anyway.**

*"Investors allowed PREPA to issue bonds, then, PREPA borrowed from private banks to pay the bond's interests; then, borrowed from the Government Development Bank (from herein "GDB") to pay back the private bank loans, and the GDB, in turn, issued more bonds to refinance all. Afterwards, PREPA would issue a new debt to pay GDB's outstanding interests, pay principal and pre-pay the new bonds' interests for several years -a cycle that is repeated over and over- and in which the original debt is never paid"*

**Another detailed description of the Bennie Madoff type Ponzi Scheme the municipal agencies were running for many years.**

*"This practice could constitute a **fraud scheme** for which the federal agencies that regulate financial instruments and the **Security Exchange Commission** could take action against and/or pursue civil suits against these institutions. That is the reason why we P a g e | 18 are referring this Report and its findings to those entities, so that they may assume the appropriate jurisdiction over these acts."*

**The Senators identified this as a fraud scheme and asked the Securities and Exchange Commission to Act.  The SEC did nothing.**

**The Senators referred this to the Department of Justice and asked them to act, the DOJ refused to do anything.**

The findings in this report could not be any clearer and it was all ignored by the SEC and the DOJ, resulting a few years later in the largest municipal bond default in American history.

**Superior Court of The District of Columbia**

**Civil Actions Branch**
**Richard Lawless V. Wp Company, LLC (Washington Post)**
**Case #2021 CA 003519 B**

Plaintiff Evidence Exhibit Five

**Articles Written By the Washington Post on this Subject**

*Richard Lawless (Plaintiff) is suing the Washington Post and their senior management team for participating in (Aiding and Abetting) up to sixty major felonies related to the Puerto Rico bond default and bankruptcy. Without the Washington Post's participation these on-going crimes would not have been possible.*

The following articles are just a small example of the articles written by the Washington Post that underlined excluded what they knew. By suggesting "alternative" reasons for the Puerto Rico bond default they led their subscribers and the American people to believe that no one was responsible for the $74 billion dollar default and the $40 billion dollars the original bondholders lost (had stolen) due to the default.

The Post did this to prevent victims from suing the major Wall Street banks for securities fraud. Although the newspaper was sitting on a mountain of evidence that definitely pointed to massive securities fraud and theft on a grand scale, the paper played its role in this criminal scheme by proposing reasons for the default that would leave the victims to believe there was no one to sue or hold responsible while withholding what they knew.

Here are some examples for what the Post wrote;

*"Puerto Rico's situation is not dissimilar to Detroit's, which was the culmination of years of economic stagnation and bad policy. Puerto Rico, an island in the Caribbean that is about the size of Connecticut with half its gross domestic product, needs billions to stimulate its economy and upgrade its infrastructure, including its water and electrical delivery systems as well as waste collection. Both also face massive pension obligations."*

This is a far different story than the Puerto Rico default was caused by massive securities fraud, fraudulent credit ratings, misleading financials, broken bond covenants, tens of billions in theft.  Basically, a decades long Ponzi Scheme as stated by the Puerto Rico government itself.

In the Washington Post Version, it is almost an **Act of God**. No one is accountable, saving the Wall Street banks from hundreds of billions of dollars in lawsuits and possible criminal charges.

*"They were the ultimate trifecta: triple, tax-exempt bonds. If you bought Puerto Rico bonds, you paid zero local income tax on the "coupons," the periodic interest you are paid for buying the bond. You paid zero state tax on the coupons. You paid zero federal tax on the coupons."*

**A suggestion it was the tax policy on the bonds that contributed to the default.**

Here are some more misleading excuses proposed the Washington Post; **(all why the Newspaper sat on a mountain of evidenc**e**)**

*"As its economy has withered its debt has mounted, and the unemployment rate has settled into double digits. The territory's agriculture department suspended subsidies to farmers. Businesses experienced power failures from the state-owned utility. The treasury withheld tax refunds."*

It was the economy! Who can you hold accountable for that? The Unemployment Rate! It was the agriculture department's fault! The utility had power failures! The treasury withheld tax refunds.

**Funny, nothing about it was all a Bernie Madoff type Ponzi Scheme from day one.**

**EVERYONE RELAX, IT IS NO BIG DEAL!**

*"The average investor on the street will be unaffected," said David Kass, a professor of finance at the University of Maryland. "If a small investor did invest in a municipal bond mutual fund, Puerto Rico would represent no more than 1 or 2 percent. This will have an infinitesimal impact on an investor investing in municipal bond funds."*

**Forty Billion Dollars was Stolen! It was a big deal.**

*"Trump Made Puerto Rico's Debt Worse After His Golf Course Filed for Bankruptcy"*

Its Trumps Fault!

Washington Post claims these are the real facts;

*"**The Facts**

*Puerto Rico owes more than $70 billion because of a decade-long
economic recession. The government owes so much that it doesn't have
enough cash to pay for core public services. Its infrastructure already was
crumbling before Hurricane Maria."*

This is just a small sample of the Washington Post's **knowingly** misleading
statements.

## Superior Court of The District of Columbia

### Civil Actions Branch
### Richard Lawless V. Wp Company, LLC (Washington Post)
### Case #2021 CA 003519 B

Plaintiff Evidence Exhibit Six

## The Washington Post had in its Possession Documents from the Securities and Exchange Commission

*Richard Lawless (Plaintiff) is suing the Washington Post and their senior management team members for participating in (Aiding and Abetting) up to sixty major felonies related to the Puerto Rico bond default and bankruptcy. Without the Washington Post's participation these on-going crimes would not have been possible.*

It is pretty obvious from Plaintiff's evidence exhibits one through five that the Washington Post and its leadership staff all knew the Puerto Rico municipal bonds were no good on the day they were issued. Between 2010 and 2015 there was a huge flurry of bond refinancing by the Puerto Municipal entities. That is the hallmark of a Ponzi Scheme. Raise new money from unsuspecting victims (new bond buyers) and pay off the old bond owners before that figure out you can not make payments on the bonds but you could never pay them back.

The Post knew all this and their managers (the defendants) covered that up, failed to alert the authorities and knowingly ran misleading articles. Why would the Post employees do that? Could it be because there were as many as sixty-eight United States Senators that were involved in this and accepted bribes? As a political newspaper in Washington D.C. who in Washington would talk to them if they spill the beans on this? Or was it the participation of the major banks like, Wells Fargo, B of A, Citibank and Morgan Stanley? The good news is that we don't need to know for sure, the fact that the newspaper participated is what this trial is all about, not why they did it.

The Washington Post Company is just a legal entity. If we are to stop this on-going activity in the Press, we MUST hold the senior newspaper managers personally responsible. They made the decisions to do all this.

Take a look at the SEC documents the newspaper had in their possession as early as first quarter of 2016;

**All these documents were derived from a SEC Freedom of Information Request**

<u>Forensic Accounting Review</u>

- Phantom Income
- Debt Service Coverage of Less than 1 to 1
- Collusion between the credit rating agencies
- False and misleading financials
- Worthless bond covenants
- Hallmarks of a Ponzi Scheme
- Financials of a Criminal Organization
- Massive Theft
- GAAP accounting violations

-----

- Oil for Money Scam Tracks to Financial Statements

- EPA Violations could only come from low grade oil (billed for high grade oil and delivered low grade oil, billions stolen)

- Involvement of Treasury Secretary Lew in criminal operations. Lew was COO with Citibank and was among the first to sell the fraudulent bonds. Now he is put in charge of the rescue plan.

- The SEC knew about the CIA recorded phone calls between the parties stealing the money, the Department of Justice and U.S. Senators.

- SEC knew about all the testimony at the Puerto Rico Senate Hearing in which numerous people testified that the banks and credit rating agencies knew that PREPA and other municipal agencies were technically bankrupt but participated anyway.

Superior Court of The District of Columbia

Civil Actions Branch
Richard Lawless V. Wp Company, LLC (Washington Post)
Case #2021 CA 003519 B

Plaintiff Evidence Exhibit Eight

The Washington Post Management Staff Received Hundreds of Emails with
Evidence Between 2015 and 2021

The attached is just a small sample of the hundreds of emails received by the
Washington Post staff over the past six years.  Plaintiff will provide many
dozens of emails, video's, books and packages received by the defendants.  In
most cases the same material was sent to the entire management team off an
email list the plaintiff created.

Because the Washington Post's criminal participation is continuing it does not
matter if the emails they received were from yesterday or December of 2015.
The emails clearly show knowledge, a determination to cover-up the crimes and
a strong commitment to the entire criminal enterprise.

The reason the Washington Post continues to participate is because the fifty
million bond holders can sue for securities fraud once they find out.  The Post
must keep this cover-up going or risk exposing the major Wall Street Banks to
tens of billions of dollars on lawsuits and exposing the role U.S. Senators played
in these crimes.  The newspaper simply will not do that, they are firmly
committed to participating in everything that defines the Washington DC
Swamp.

*"The statute of limitations in an action for relief on the ground
of fraud or mistake begins to run from the time the facts constituting
the fraud or mistake are discovered, or should reasonably have been
discovered."*

 Gmail

Richard Lawless <richardrlawless@gmail.com>

# Fwd: FOIA Request
1 message

**Richard Lawless** <richardrlawless@gmail.com>          Sat, Sep 25, 2021 at 11:36 AM
To: Christine_Hennessey@carper.senate.gov, Jazmin_Vargas@carper.senate.gov,
Mairead_Lynn@casey.senate.gov, Natalie_Adams@casey.senate.gov,
Shoshana_Marin@casey.senate.gov, "Ty_Bofferding@Cassidy.Senate.Gov
<Ty_Bofferding@Cassidy.Senate.Gov>" <Ty_Bofferding@cassidy.senate.gov>,
Molly_Block@cassidy.senate.gov, "annie_clark@collins.senate.gov
<annie_clark@collins.senate.gov>" <annie_clark@collins.senate.gov>,
"Christopher_Knight@collins.senate.gov <Christopher_Knight@collins.senate.gov>"
<Christopher_Knight@collins.senate.gov>, madeline_broas@coons.senate.gov,
hannah_smith@coons.senate.gov, "Drew_Brandewie@cornyn.senate.gov
<Drew_Brandewie@cornyn.senate.gov>" <Drew_Brandewie@cornyn.senate.gov>,
"Natalie_Yezbick@cornyn.senate.gov <Natalie_Yezbick@cornyn.senate.gov>"
<Natalie_Yezbick@cornyn.senate.gov>, Lauren_Wodarski@cortezmasto.senate.gov,
barbara.vobejda@washpost.com, timothy.curran@washpost.com
Cc: sally.buzbee@washpost.com, "cameron.barr@washpost.com
<cameron.barr@washpost.com>" <cameron.barr@washpost.com>,
"tracy.grant@washpost.com <tracy.grant@washpost.com>" <tracy.grant@washpost.com>,
kat.downs@washpost.com, krissah.thompson@washpost.com,
scott.vance@washpost.com, steven.ginsberg@washpost.com,
douglas.jehl@washpost.com, eva.rodriguez@washpost.com, mike.semel@washpost.com,
monica.norton@washpost.com, liz.seymour@washpost.com, david.malitz@washpost.com,
mitch.rubin@washpost.com, lori.montgomery@washpost.com,
zachary.goldfarb@washpost.com, jeff.leen@washpost.com, david.fallis@washpost.com,
eric.rich@washpost.com, matthew.vita@washpost.com, matthew.rennie@washpost.com,
adam.kushner@washpost.com

This is related to the SEC's role in the seventy-four billion dollar Puerto Rico bond
securities fraud. The SEC's participation and cover-up over the past six years.

These are only emails between Richard Lawless the SEC whistleblower on his massive
fraud and the management team at the SEC.

---------- Forwarded message ----------
From: **Richard Lawless** <richardrlawless@gmail.com>
Date: Sat, Sep 25, 2021 at 10:40 AM
Subject: FOIA Request
To: McHale, James M. <MCHALEJM@sec.gov>

 Gmail

Richard Lawless <richardrlawless@gmail.com>

# Washington Post Trial - DOJ Acknowledges Claims Under Federal Tort Act

1 message

Richard Lawless <richardrlawless@gmail.com>                    Mon, Oct 18, 2021 at 6:49 PM
To: sally.buzbee@washpost.com, "cameron.barr@washpost.com
<cameron.barr@washpost.com>" <cameron.barr@washpost.com>,
"tracy.grant@washpost.com <tracy.grant@washpost.com>" <tracy.grant@washpost.com>,
kat.downs@washpost.com, krissah.thompson@washpost.com,
scott.vance@washpost.com, barbara.vobejda@washpost.com,
timothy.curran@washpost.com, steven.ginsberg@washpost.com,
douglas.jehl@washpost.com, eva.rodriguez@washpost.com, mike.semel@washpost.com,
monica.norton@washpost.com, liz.seymour@washpost.com, david.malitz@washpost.com,
mitch.rubin@washpost.com, lori.montgomery@washpost.com
Cc: "tips@hotair.com <tips@hotair.com>" <tips@hotair.com>, "tips@denverpost.com
<tips@denverpost.com>" <tips@denverpost.com>, "tips@reuters.com
<tips@reuters.com>" <tips@reuters.com>, "tips@cnn.com <tips@cnn.com>"
<tips@cnn.com>, tips@nypost.com, "tips@armytimes.com <tips@armytimes.com>"
<tips@armytimes.com>, tips@forbes.com, "TIPS@NationalENQUIRER.com"
<Tips@nationalenquirer.com>, info@ap.org, "editor@thehill.com <editor@thehill.com>"
<editor@thehill.com>, "scoops@huffpost.com <scoops@huffpost.com>"
<scoops@huffpost.com>, scoops@sundaymirror.co.uk, "scoop@motherjones.com
<scoop@motherjones.com>" <scoop@motherjones.com>, Right Scoop
<tips@therightscoop.com>, "li@newsday.com <li@newsday.com>" <li@newsday.com>,
"newsroom@epochtimes.com <newsroom@epochtimes.com>"
<newsroom@epochtimes.com>, newsroom@law360.com

The Department of Justice acknowledges that the claims made under the Federal Tort
Claims Act (FTCA) have merit and should be considered (see attached). The claims
outlined in the FTCA are the identical claims made in the lawsuit against the Washington
Post.

"Crimes took place that involved $74 billion dollars in municipal bonds, the crimes were
covered up by the press, the DOJ and the SEC and this criminal enterprise is continuing
to operate with the assistance of all parties."

Sincerely,

Richard Lawless
30279 Redding Avenue
Murrieta, CA 92563

Over forty states have an exception for fraud (securities fraud)
that give the victims two years to sue from the date they found
out they were defrauded.

951-440-5230
richardrlawless@gmail.com

FTCA Filing 7-12-21.pdf
19653K

 Gmail

Richard Lawless <richardrlawless@gmail.com>

# Washington Post Subpoenas Requested
1 message

Richard Lawless <richardrlawless@gmail.com>                Fri, Oct 15, 2021 at 10:18 AM
To: sally.buzbee@washpost.com, "cameron.barr@washpost.com
<cameron.barr@washpost.com>" <cameron.barr@washpost.com>,
"tracy.grant@washpost.com <tracy.grant@washpost.com>" <tracy.grant@washpost.com>,
kat.downs@washpost.com, krissah.thompson@washpost.com,
scott.vance@washpost.com, barbara.vobejda@washpost.com,
timothy.curran@washpost.com, steven.ginsberg@washpost.com,
douglas.jehl@washpost.com, eva.rodriguez@washpost.com, mike.semel@washpost.com,
monica.norton@washpost.com, liz.seymour@washpost.com, david.maliltz@washpost.com,
mitch.rubin@washpost.com, lori.montgomery@washpost.com
Cc: "tips@hotair.com <tips@hotair.com>" <tips@hotair.com>, "tips@denverpost.com
<tips@denverpost.com>" <tips@denverpost.com>, "tips@reuters.com
<tips@reuters.com>" <tips@reuters.com>, "tips@cnn.com <tips@cnn.com>"
<tips@cnn.com>, tips@nypost.com, "tips@armytimes.com <tips@armytimes.com>"
<tips@armytimes.com>, tips@forbes.com, "TIPS@NationalENQUIRER.com"
<Tips@nationalenquirer.com>, info@ap.org, "editor@thehill.com <editor@thehill.com>"
<editor@thehill.com>, "scoops@huffpost.com <scoops@huffpost.com>"
<scoops@huffpost.com>, scoops@sundaymirror.co.uk, "scoop@motherjones.com
<scoop@motherjones.com>" <scoop@motherjones.com>, Right Scoop
<tips@therightscoop.com>, "li@newsday.com <li@newsday.com>" <li@newsday.com>,
"newsroom@epochtimes.com <newsroom@epochtimes.com>"
<newsroom@epochtimes.com>, newsroom@law360.com

The attached Washington Post Subpoenas were filed with the court today.

--
Sincerely,

Richard Lawless
30279 Redding Avenue
Murrieta, CA  92563
951-440-5230
richardrlawless@gmail.com

5 attachments

Wp Subpoena.pdf
3439K

Mulder Subpoena.pdf
3690K

Grant Subpoena.pdf
3688K

Cameron Barr Subpoena.pdf
3659K

Sally Buzbee Subpoena.pdf
3698K

## Superior Court of The District of Columbia

### Civil Actions Branch
### Richard Lawless V. Wp Company, LLC (Washington Post)
### Case #2021 CA 003421 B

Plaintiff Evidence Exhibit Nine

### United States Senators Accepting Bribes

The defense would like you to believe that this is some black helicopter, crazy conspiracy theory. Unfortunately, you have seen the "mountain of evidence" that the crimes took place. The only question is why the Department of Justice and the Securities and Exchange Commission didn't act.

If you recall, the DOJ and SEC were working closely with the Plaintiff on these crimes from July 2015 through October of 2016 (see video evidence). What happened in that time frame that would cause the DOJ and SEC to stop communicating with the Plaintiff?

The answer is simple and predictable. **One hundred and twenty million dollars in bribes** (campaign contributions) to United States Senators. Who appoints the leadership teams at the DOJ and SEC? United States Senators. You don't need to be a brain surgeon to see what happened here. You just need some common sense.

Before any of the Senators accepted these bribes, they were all furnished with the evidence you have seen in this trial. In other words, the Senators knowingly accepted this money from the criminals who conducted this seventy-four-billion-dollar securities fraud.

These bribes are all tracked through the **Federal Election Commission** (FEC) and are generally public information. There are a number of cute things that politicians have their donors do or that they do themselves to hide the fact they are accepting more money from a donor then is allowed by law or they want to hide the fact they are accepting money from a certain group of people. For instance, Senator Elizabeth Warren rallies against Wall Street so she doesn't want the public to know that she takes millions of dollars from them. So, the

contribution will come from a Political Action Committee run by someone like Senator Chuck Schumer.

In other cases, the law firms for the major banks will create new legal entities whose only real purpose is to funnel money from that same bank to the politician to make it appear they are not exceeding the legal contribution limits. All that has happened here.

Why are the Banks, Law Firms and Credit Agencies bribing our U.S. Senators? They don't want to be prosecuted or sued for their roles in this criminal enterprise. There is well over seventy-four billion dollars at stake plus punitive damages and possible criminal prosecution. The bribes are a good investment for the bankers.

Unfortunately, in addition to the bribes which are easy to track, the Senators were also caught on recorded telephone conversations by the CIA as some of this money was laundered by the criminals.

Here is a sample of one Senator's bribes and a list of all the Senators that accepted the bribes.

Senator Tom Carper (Delaware) Bribes:
American Bankers Association $39,600
Ernst & Young $39,500 (They prepared the fraudulent financials)
UBS Americas $37,500 (traded and sold bonds)
Blackstone Group $41,000 (reseller/buyer/investor)
JP Morgan $68,200 (Lead seller/underwriter of fraudulent bonds)
Goldman Sachs $58,000
Plus 20 more just like this.......

In return Tim Carper voted for:
PROMESA
New Dodd Frank Legislation

There is also an assumption Mr. Carper pressured the Senates political appointees at the DOJ and SEC to not investigate, prosecute or regulate this matter.

Here is a more comprehensive list of Senators that accepted the bribes and performed services for the criminals.

Senator Sessions
Senator Sullivan
Senator Flake
Senator McCain
Senator Feinstein
Senator Bennet
Senator Gardner
Senator Blumenthal
Senator Murphy
Senator Carper
Senator Coons
Senator Nelson
Senator Rubio
Senator Isakson
Senator Hirano
Senator Schatz
Senator Crapo
Senator Risch
Senator Durbin
Senator Kirk
Senator Coats
Senator Donnelly
Senator Roberts
Senator McConnell
Senator Paul
Senator Cassidy
Senator Vitter
Senator Collins
Senator King
Senator Cardin
Senator Mikulski
Senator Peters
Senator Stabenow
Senator Franken

Senator Klobuchar
Senator Cochran
Senator Blunt
Senator McCaskill
Senator Fischer
Senator Reid
Senator Ayotte
Senator Shaheen
Senator Heinrich
Senator Udall
Senator Gillibrand
Senator Schumer
Senator Burr
Senator Heitkamp
Senator Hoeven
Senator Inhofe
Senator Lankford
Senator Wyden
Senator Casey
Senator Toomey
Senator Reed
Senator Whitehouse
Senator Graham
Senator Rounds
Senator Thune
Senator Alexander
Senator Corker
Senator Cornyn
Senator Hatch
Senator Leahy
Senator Kaine
Senator Johnson
Senator Barrasso
Senator Enzi

Superior Court of The District of Columbia

Civil Actions Branch

Richard Lawless V. Wp Company, LLC (Washington Post)

Case #2021 CA 003519 B

Plaintiff Evidence Exhibit Ten

Plaintiff Damages

See attached